**IN THE COURT OF APPEALS OF IOWA**

No. 15-2080
Filed March 9, 2016

**IN THE INTEREST OF N.B.,**
**Minor Child,**

**L.A., Mother,**
Appellant,

**J.B., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Hardin County, Adria Kester, District Associate Judge.

A mother and father each appeal from the order terminating their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Jennie L. Wilson-Moore of Wilson Law Firm, Marshalltown, for appellant mother.

Douglas E. Cook of Cook Law Firm, Jewell, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Darrell G. Meyer, Marshalltown, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Jerry, the father, and Lindy, the mother, of N.B., appeal from the order terminating their respective parental rights. On appeal, they contend the juvenile court erred in determining the best interest of the child was served by termination of their parental rights and the juvenile court erred in not granting them an additional six months' time to pursue reunification with the child.

I.

N.B., born in 2009, is the only child of Jerry and Lindy. The parents have struggled to provide for N.B. due to their criminal conduct, unresolved substance abuse, and unresolved mental health conditions. The Iowa Department of Human Services (IDHS) founded reports against Lindy for failure to provide proper supervision in 2010 and again in 2011. A guardianship was initiated in 2011, and the child's paternal uncle and aunt were appointed the child's guardians. The guardianship was established because neither parent was available to care for N.B.; Jerry was in prison, and Lindy was in and out of jail. Jerry was released from prison on parole on November 20, 2013, and the guardianship was terminated on May 1, 2014. By August 2014, Jerry was on his way back to prison, and Lindy was unavailable due to her placement in a six-month drug treatment program. At that time, N.B. was formally removed from his parents' custody and placed with IDHS. Ultimately, the child was placed with the paternal uncle and aunt. The child has remained in their physical care throughout these proceedings.

N.B. was adjudicated in need of assistance in September 2014. Following the adjudication of the child, the parents continued as they had in the past. In

August 2014, when N.B. was removed from the parents, Jerry had criminal charges pending and was in jail. Lindy was in a drug treatment program at a residential facility in Ames. In November 2014, Jerry was transferred to a residential facility in Marshall County. Lindy had supervised phone contact with the child in November 2014, which was her first contact with N.B. since January 2012. In December 2014, Jerry visited with the child. Both parents were maintaining employment. Late in December 2014, Lindy's work locker was searched. The search uncovered prescription pills that were not prescribed to her. Her employment was terminated and a revocation hearing was scheduled. In January 2015, Jerry canceled a visit with the child and failed to return to the residential facility following work. He was picked up two weeks later and taken to jail in Marshall County. In February 2015, Lindy and the child had a visit during which Lindy violated her probation by using a cell phone and by getting money from outside resources without approval. Lindy was transferred to Hardin County Jail. At her revocation hearing, it was determined Lindy would be moved to the halfway house in Ames again; however, because of the additional charges from earlier that month, she was transferred back to Hardin County Jail. Later in February 2015, Jerry was transferred to prison in Fort Dodge. In March 2015, Lindy was transferred from Hardin County Jail to a residential treatment facility in Clinton. By April, however, there was a warrant for her arrest out of Story County for forgery and illegal use of a credit card. Lindy left the treatment facility and stated she was unsure if she would return; she did return to the facility after less than a day, but she did not immediately turn herself in on the warrant. As a result, visitation was postponed due to the risk of Lindy being arrested while on a

visit with N.B. A day later, Lindy was in Clinton County Jail before being transferred to Story County Jail. At that point, visitation with both parents was suspended due to their instability.

On April 15, 2015, Lindy was released from jail and told to contact her probation officer within twenty-four hours. She returned to the treatment facility in Clinton but did not contact her probation officer. On April 17, she was sent back to Story County Jail for contempt of court. On April 22, she left the jail, stating she could return to the Clinton facility. She did not return to the facility; instead, she apparently went to stay with a friend in Clinton. On April 28, she was admitted to a Clinton hospital for injuries sustained following a serious domestic assault in which she was the victim. On April 30, she was transferred to Hardin County Jail. On June 1, 2015, Lindy was transferred to prison in Mitchellville.

On September 14, 2015, the State filed its petition to terminate the parents' rights in N.B. At the time of the termination hearing in November 2015, both parents were in prison. Both anticipated they might be paroled by January or February 2016. Following parole, it was anticipated that Lindy would have inpatient treatment and Jerry would have to transition into a halfway house. Lindy testified that children could visit her at the facility upon her parole. She further testified she could stay there up to two years. Jerry testified he believed he would be able to leave the halfway house within ninety days. Jerry noted that he had been in halfway houses twice before, completing one program successfully. The unsuccessful stay was in January 2015, when he absconded

due to a belief that the workers were not treating him fairly. On November 23, 2015, the juvenile court terminated the parents' respective rights in N.B.

II.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We will uphold an order terminating parental rights only if there is clear and convincing evidence establishing the statutory grounds for termination of the parent's rights. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude termination. *See id.*

III.

We have little trouble concluding the State proved grounds for termination pursuant to Iowa Code section 232.116(f). That code section authorizes the termination of parental rights if the court finds all of the following have occurred:

(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(f) (2013). None of the elements are in dispute. N.B. was older than four at the time of the termination hearing. The child was adjudicated a child in need of assistance in September 2014. N.B. has not lived with either parent since August 2014. At the time of the termination hearing, the child could not be returned to the custody of either parent because each was incarcerated.

We next address the best interests of the child. The second part of the analysis compels us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In doing so, we may consider whether the parent's ability to provide for the needs of the child is affected by the parent's mental capacity, mental condition, or imprisonment for a felony; the child's ability to integrate into any foster family, when applicable; and the relevant testimony of an individual with whom the child has been placed. *Id.*

There is clear and convincing evidence neither parent can provide for the physical, mental, and emotional needs of the child. Although past conduct is not determinative of future conduct, it is probative. *See In re K.F.*, No. 14–0892, 2014 WL 4635463, at *4 (Iowa Ct. App. Sep. 17, 2014) ("What's past is prologue."); *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (concluding a parent's past behavior is indicative of "the quality of care the parent is capable of providing in the future"). As set forth above, both parents have a long history of substance abuse and criminal behavior. Neither parent has been able to maintain a residence outside placement with the Department of Correctional Services for years. Both parents have founded reports with IDHS. This history, as a predictor of future behavior, militates in favor of terminating the parents' respective rights. *See, e.g.*, *In re C.M.*, No. 14–1140, 2015 WL 408187, at *4–5 (Iowa Ct. App. Jan. 28, 2015) (affirming termination of parental rights where the parents sought more time but evidence established they were unlikely to resolve their substance abuse problems); *In re H.L.*, No. 14–0708, 2014 WL 3513262, at *4 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights where the father had history of substance abuse and criminal conduct); *In re J.L.*, No. 02–1968, 2003 WL 21544226, at *3 (Iowa Ct. App. July 10, 2003) (concluding that relapse of parent despite offer of services supported termination of parental rights); *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the

likelihood the parent will be in a position to parent the child in the foreseeable future.").

In contrast, the paternal aunt and uncle have demonstrated an ability to provide stability for and meet the needs of the child. N.B. has been placed with their aunt and uncle during the pendency of this case. N.B. has bonded with them and their children and integrated into their family. When a service provider raised an issue related to the safety of their home, they made arrangements to move into a safer home.

Jerry and Lindy contend the juvenile court should have granted them an additional six months to attempt reunification. To defer permanency for six months, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Both parents argue their anticipated parole dates as reasons to grant the extension. As an initial matter, it is not clear that either parent will be paroled or in a position to assume custody of the child. Lindy may be required to stay up to two years in a transitional facility. The child would not be allowed to reside with her in the facility. Jerry believes his stay in a halfway house may only last ninety days following his expected release in January, but that is uncertain. Further, based on the parents' past conduct, it is unlikely the need for removal will no longer exist at the end of the six-month period. The parents have engaged in the same patterns of behavior for years without change. The last time Jerry was paroled, he absconded from the halfway house and was subsequently incarcerated. The

argument fails. *See, e.g., In re L.W.*, No. 12-0072, 2012 WL 1247131, at *1 (Iowa Ct. App. Apr. 11, 2012) (affirming termination of parental rights and declination of additional time where both "parents also have significant criminal histories, repeated incarcerations, and several founded child abuse assessments"); *In re C.T.*, No. 08-0139, 2008 WL 783361, at *2 (Iowa Ct. App. Mar. 26, 2008) (affirming termination where father lacked bond with the child due to history of incarceration).

**AFFIRMED ON BOTH APPEALS.**